JOURNAL ENTRY AND OPINION
On March 10, 2000, the applicant, Duane Gregley, pursuant to App. R. 26 (B), applied to reopen this court's judgment in State of Ohio v. Duane Gregley (Dec. 27, 1999), Cuyahoga App. No. 75032, unreported, which affirmed Mr. Gregley's convictions and sentences for two counts of aggravated murder, one count of attempted aggravated murder, one count of carrying a concealed weapon, and one count of having a weapon under disability. On May 10, 2000, the State of Ohio filed a brief in opposition, and on May 22, 2000, Mr. Gregley filed a reply brief. For the following reason, this court denies the application.
 FACTUAL AND PROCEDURAL BACKGROUND
On November 14, 1997, Duane Gregley and Donald Whitt had an extended fistfight as part of a dispute about who controlled what area for selling drugs. After the fight Mr. Whitt met two of his friends, Willie Whatley and Jermaine Davis, at his girlfriend's apartment and decided to go drinking.
On their way they stopped at a convenience store, where Mr. Gregley was standing outside. He and Mr. Whitt exchanged angry words before the three friends went into the store and Mr. Gregley walked away.
A few minutes later Mr. Gregley came into the store and said:
"You all going to lay it down. I don't take threats lightly." He pulled a gun from his waist and shot at Mr. Whatley, who fell to the ground unhurt and sought cover. After Mr. Gregley shot Mr. Whitt and Mr. Davis as they tried to flee the store, he stood over them and took turns shooting them. Mr. Whatley used this opportunity to run out of the store. Mr. Gregley fired at him and missed. Mr. Whatley then immediately summoned police to the store, from which Mr. Gregley had fled.
Mr. Whatley later identified Mr. Gregley through a photo array. Mr. Gregley turned himself into the police after some television coverage of the incident featuring his picture. The indictments included death penalty specifications.
At trial the witnesses testified to the above facts. Mr. Whatley identified Mr. Gregley in court. A worker from the store testified that she knew Mr. Gregley, because she had bought cocaine from him. She further stated that she saw him come into the store, pull out what looked like a small machine gun, cock it and say "I don't take threats likely." She heard a shot and ran out of the store. Mr. Gregley did not put on a defense.
Mr. Gregley was found guilty on all counts. The jury deadlocked during the sentencing phase deliberations. The trial judge then discharged the jury and sentenced Mr. Gregley to life without parole on the aggravated murder counts and nine years on the attempted murder charge, all to run consecutively; he then imposed one year sentences on the weapons charges to run concurrently with all the sentences. Mr. Gregley timely appealed.
Appellate counsel raised the following assignments of error:
The trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. The trial court erred in instructing the jury on inference and presumption, and by erroneously referring to a "mass murder" specification. The verdicts were against the weight of the evidence. The trial court erred in restricting Mr. Gregley's right to cross-examination of a state's witness, the store owner concerning drug dealing and bias. In an entry journalized December 27, 1999, this court affirmed and noted that the "state presented overwhelming and credible evidence to show defendant committed the acts in question." (Page 11 of the opinion.)
On March 10, 2000, Mr. Gregley timely filed this application to reopen. On April 13, 2000, he filed a pro se notice of appeal to the Supreme Court of Ohio, which dismissed the appeal on May 17, 2000.
 DISCUSSION OF LAW
Mr. Gregley now submits an extensive list of arguments that his appellate counsel should have made. (1) The indictment was deficient because the Grand Jury foreman did not sign it, because it listed a mass murder specification, because it did not specify venue and because the Grand Jury was not properly impaneled. (2) The prosecutor engaged in misconduct by misstating the law as to a mandatory presumption and by misstating various matters such as whether Mr. Whatley's conviction for domestic violence was a fifth degree felony. (3) His trial counsel was ineffective for failing to investigate, for failing to use the investigator's notes to impeach witnesses, for failing to properly characterized voluntary manslaughter, for failing to object to a surprise witness, for failing to object to leading questions, and for failing to object to a conflict of interest when one witness, Deborah Walker, turned out to be the niece of the investigator. (4) The prosecutor failed to disclose exculpatory evidence. For this argument Mr. Gregley contends that the police unfairly set up the photo array and told the witnesses which one to pick. He also maintains that a bottle at the store had someone else's fingerprint on it. (5) The evidence was insufficient to sustain the verdict. (6) Appellate counsel was ineffective for not consulting with Mr. Gregley and not properly arguing the voluntary manslaughter instruction issue. (7) There was juror misconduct when the jury foreman between the verdict and penalty phase spoke to an assistant prosecutor and one of the investigating police officers. (8) The trial court erred in admitting inflammatory and grisly photographs of the victims.
In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."' Strickland,104 S.Ct. at 2065.
Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen (1996), 77 Ohio St.3d 172, 672 N.E.2d 638.
Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
In the present case Mr. Gregley's arguments on ineffective assistance of appellate counsel are not well taken. Appellate counsel was not ineffective for not arguing that the indictments were deficient. An examination of the indictments reveals that they properly state venue, as the crime was committed in Cuyahoga County, Ohio, and that there is a signature on the signature line for the Grand Jury foreman. Appellate counsel raised the issue of the nomenclature for the "mass murder" specification, and this court rejected it on its merits, specifically rejecting the idea that the jury found Mr. Gregley guilty because the indictments labeled the aggravated murder specifications as mass murder. Finally, Mr. Gregley does not explain how the Grand Jury was not properly impaneled. Rather he relies upon the state's response to discovery requests under Criminal Rule 16 (A), in which the state checked off the line for "No Grand Jury Testimony." All this means is that Mr. Gregley did not testify before the Grand Jury, not that there was no Grand Jury.
The other arguments are similarly meritless. Given the overwhelming and credible evidence of guilt, Mr. Gregley cannot and has not shown prejudice. State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, (1985) cert denied 472 U.S. 1012. For example, the incident of juror misconduct occurred after the verdict phase of the trial. Such conduct did not affect the sentence because the trial judge determined the sentence after the jurors became deadlocked during the sentencing phase. Any anxiety the juror may have felt about sitting on a capital case does not establish a reasonable doubt on guilt
Moreover, many of his arguments are based on a biased reading of the transcript. For example, he claims that the police instructed the witnesses to pick his picture out of the photo array. A full reading of those sections of the transcript indicates that a proper array was presented. Similarly, he claims that there was evidence of another person leaving the store after the shooting. The transcript shows that such "evidence" was hearsay; a witness testified that she had heard that someone else was at the store at the time of the shooting.
Furthermore, res judicata properly bars this application. See, generally, State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104. Res judicata prevents repeated attacks on a final judgment and applies to all issues which were or might have been litigated. In State v. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, the supreme court ruled that res judicata may bar a claim of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine unjust.
In the present case Mr. Gregley filed his own appeal to the Supreme Court of Ohio, which denied his appeal. This court has consistently held that such appeals bar claims of ineffective assistance of appellate counsel based on the principles of res judicata. State v. Kaszas (Sept. 21, 1998), Cuyahoga App. Nos. 72546 and 72547, unreported, reopening disallowed (Aug. 14, 2000), Motion No. 16752; State v. Bussey (Dec. 2, 1999), Cuyahoga App. No. 75301, unreported, reopening disallowed (Aug. 8, 2000), Motion No. 16647 and State V. Blufford (Dec. 9, 1999), Cuyahoga App. No. 75228, unreported, reopening disallowed (May 31, 2000), Motion No. 15241. Moreover, many of Mr. Gregley's arguments are variants of what his appellate counsel raised. The application of the doctrine in this case would not be unjust.
Accordingly, this court denies the application to reopen.
 ___________________________ LEO M. SPELLACY, JUDGE
JOHN T. PATTON, P.J. and KENNETH A. ROCCO, J. CONCUR.